UNITED STATES DISTRICT COURT
DISTRICT OF MASSAHCUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>vs. )<br> )<br>SILVIO ORTEGA-HERRERA, )<br>a/k/a ELADIO HERRERA, )<br>a/k/a OSCAR DIAZ, )<br>a/k/a SILVIO ORTEGA )<br>    DEFENDANT ) | Criminal No.<br>05CR10071RWZ |

## MEMORANDUM IN SUPPORT OF
## OBJECTIONS TO PSR

**FACTS:**

The defendant objects, *inter alia*, to the calculation of his criminal history category. Specifically he contends that certain of his prior convictions were "functionally consolidated" and are therefore related under U.S.S.G. § 4A1.1 (a). Those prior convictions are set forth below.

(a)   On January 23, 2001 the defendant entered a plea of guilty in the South Boston District Court to the offense of possession of cocaine with intent to distribute. He received a sentence of 15 months in the House of Correction. For this conviction he received 3 criminal history points. U.S.S.G. § 4A1.1 (b).[1] On the same day before the same judge he also entered pleas to furnishing a false name and possession of a false registry document.[2] He was sentenced to two three month sentences consecutive to the sentence imposed on the drug count, but concurrent with each other. For these convictions he was awarded 1 criminal history point pursuant to U.S.S.G. § 4A1.1 (c).

---
[1] This offense is set forth in paragraph 31 of the PSR.
[2] These offenses are set forth in paragraph 32 of the PSR.

(b) On March 1, 2001 he entered a guilty plea to the offense of operating a motor vehicle after suspension of his license in the East Boston District Court. The case was placed on file. For this offense he received 1 criminal history point pursuant to U.S.S.G. § 4A1.1 (c).[3]

(c) On March 16, 2001 the defendant entered a plea in the Boston Municipal Court to possession of a controlled substance with intent to distribute and received a sentence of six months in the House of Correction specifically concurrent with the "sentence presently being served," i.e., the sentence received on January 23, 2001.[4] For this offense he received 2 criminal history points pursuant to U.S.S.G § 4A1.1 (b).

(d) On March 21, 2001, in the Roxbury District Court, he entered a plea to distribution of a controlled substance[5] and a plea to an additional offense of distribution of a controlled substance.[6] He was sentenced on both offenses to a term of six months in the House of Correction concurrent with the fifteen month term imposed on January 23, 2001. The offenses occurred on separate dates. However, the sentencing occurred before the same judge on the same day. The docket sheet for the latter offense specifically referred to the docket number for the January 23, 2001 South Boston District Court case. For each of these offenses he received 2 criminal history points for a total of 4 criminal history points pursuant to U.S.S.G. § 4A1.1 (b).

---

[3] This offense is set forth in paragraph 30 of the PSR. The defendant was represented by attorney Michael Cerulli of Swampscott, MA.
[4] This offense is set forth in paragraph 29 of the PSR.
[5] This offense is set forth in paragraph 27 of the PSR.
[6] This offense is set forth in paragraph 28 of the PSR.

Probation has scored all of the above offenses as indicated for a total of 11 criminal history points placing the defendant in category V. Given a total offense level of 21 the defendant's guideline range is 70-87 months. The defendant contends that his total criminal history point score is 3 placing him category II and exposing him to a guideline range of 41-51 months.

The defendant was represented by attorney Raymond O'Hara of Worcester in connection with the offenses described above. Mr. O'Hara's affidavit attached hereto and marked A, indicated that these cases were essentially consolidated for sentencing. Since these offenses were subject to the jurisdiction of different courts of necessity each of the offenses had to be dealt with on different dates by different judges. However, as the affidavit makes clear, the dispositions, i.e., the sentences were the subject of negotiation between counsel for the defendant and representatives of the Suffolk County District Attorney's office.

ARGUMENT:

The sentencing guidelines provide that prior sentences imposed in related cases are to be treated as one sentence for purposes of §4A1.1 (a), (b), and (c). The guidelines further instruct to use the longest sentence imposed in the case of concurrent sentences and the aggregate of consecutive sentence. U.S.S.G. §4A1.2 (a) (2). The commentary contained in the application notes indicate that prior sentences are considered related if they were consolidated for sentencing. The defendant contends that the sentences imposed in connection with the convictions set forth above were functionally consolidated and accordingly ought to be treated as related, even though the offenses

occurred on different dates and in spite of the fact that the sentences were imposed by different judges.

The rule in this Circuit with respect to the concept of "relatedness" for the purpose of scoring a defendant's prior convictions for criminal history points was articulated in *United States v, Correa*, 114 F.3d 314 (1st Cir. 1997). The court held, with respect to charges that occurred on different dates and did not arise out of the same course of conduct, "charges based thereon should not be regarded as having been consolidated (and therefore 'related') unless the original sentencing court entered an actual order of consolidation or <u>there is some other persuasive indicium of formal consolidation apparent on the face of the record which is sufficient to indicate that the offenses have some relationship to one another beyond the sheer fortuity that the sentence was imposed by the same judge at the same time</u>." *Id.* at 317. (Emphasis added).

Here the defendant was sentenced by different judges at different times in different courts. There could be no formal order of consolidation as the offenses were within the jurisdiction of different courts. However, there was a primary sentence which was imposed in the South Boston District Court on January 23, 2001. On that day the defendant was sentenced to a fifteen month term on one offense and a consecutive sentence of three months on two additional offenses. Each succeeding judge in turn thereafter sentenced the defendant to concurrent terms in specific recognition of the existence of the sentence then being served or by explicit reference to the docket number of the South Boston District Court case. The affidavit of his counsel of record indicates

that these offenses and the sentences imposed thereon were negotiated and entered as part of a global disposition of all of the defendant's criminal matters. The record therefore provides sufficient indicia of formal consolidation, adequate to pass the Correa standard as articulated.

Since *Correa* was decided however, the concept of "functional consolidation" received tacit recognition by the United States Supreme Court in *Buford v. United States,* 532 U.S. 59 (2001). "In *Buford*, the Supreme Court placed its imprimatur on the concept of 'functional consolidation,' which allows a sentencing court to consider two convictions consolidated, even in the absence of a formal order of consolidation, if the convictions were factually or logically related, and sentencing was joint. *Id*. at 61." *United States v. Goetchius*, 369 F. Supp. 2d 13 (2005). The First Circuit, as pointed out in the *Goetchius* decision had not dealt with the issue of "functional consolidation" or "constructive consolidation" since the decision of the United States Supreme Court in *Buford* as of the date of that decision on April 25, 2005. In a more recent decision, that did not reference *Buford, t*he First Circuit dealt with and rejected a relatedness claim in *United States v. Martins*, 2005 U.S. Lexis 12704 (June 27, 2005). The court, finding no order of formal consolidation and no other "persuasive indicium of formal consolidation (such as a docket entry)," rejected the defendant's claims that two prior offenses occurring on different dates were related solely because sentence was imposed on the same day by the same judge. *Id*. at 12725-27. Since the court did not specifically refer to or consider the *Buford* it cannot be said that *Martins* is a rejection of the concept addressed in either *Buford* or *Goetchius*.

5

Faced with multiple charges pending in different courts and eventual deportation, counsel for the defendant set about to resolve all pending matters in a consolidated manner. Had the cases been pending in the same court and jurisdiction a formal consolidation order could have been sought and either granted or denied. Given the fact that these offenses were all pending in different courts, formal consolidation was impossible, and so the defendant negotiated a global disposition of all matters with representatives of the same district attorney's office. This is supported not only by the affidavit of counsel for the defendant, but also by the court records all of which make explicit reference to the sentence "now being served" or specific reference to the docket number of the South Boston District Court Sentence. Under these circumstances the offenses and sentences imposed on the defendant are related and his criminal history score is 3 points placing him in Category II.[7]

The offense to which the defendant entered a guilty plea on March 1, 2005 was placed on "file."[8] This was not a final disposition of this offense and should not be counted as a sentence. See *United States v. Correa*, 114 F.3d 314, 315 and n.1 quoting *DuPont v. Superior Court*, 401 Mass. 122 (1987)( a judge, with the consent of the defendant, may place a case on file rather than impose a <u>sentence immediately</u>.")(emphasis added). Since no sentence was imposed on this offense the

---

[7] The sentences imposed on January 23, 2001 ought to be considered "related" if nothing else is. The offenses occurred on the same day, sentences were imposed by the same judge and docket entries specifically refer to the fifteen month sentence by docket number. This would reduce the criminal history score by 1. The same argument applies with equal force to the sentences imposed in March 21, 2001. Each of the offenses was scored 2 points. If these offenses were considered related the criminal history point score would be reduced by another 2 points for a total of 3, leaving the defendant with 8 criminal history points and placing him in category IV.

[8] The PSR scored 1 criminal history point for this conviction treating the offense as a diversionary disposition under §4A1.2 (f).

provisions of U.S.S.G. §4A1.2 (a)(4), which covers situations in which the defendant has been convicted, but not yet sentenced, must be reviewed to determine if this offense should receive any criminal history points.  Under this section qualifying convictions for which no sentence was imposed are scored 1 point under §4A1.1(c).  However, if the offense is listed in §4A1.2(c)(1) the pertinent language of this section provides "[i]n the case of a conviction for an offense set forth in §4A1.2(c)(1), apply this provision only where the sentence for such offense would be countable regardless of type or length."  The application note 1 for this section further instructs that "[i]n the case of an offense set forth in §4A1.2(c)(1) (which lists certain misdemeanor and petty offenses), a conviction for which the defendant has not yet been sentenced is treated as if it were a prior sentence under §4A1.2(a)(4) <u>only where the offense is similar to the instant offense (because sentences for other offenses set forth in §4A1.2(c)(1) are counted only if they are of a specified type and length)</u>. (Emphasis added).  The offense that was placed on file is a minor motor vehicle offense and is specifically listed in <u>§4A1.2(c)(1)</u>, i.e., operating a motor vehicle after suspension of license.  Since this offense is not similar to the defendant's present offense no criminal history points may be assigned.[9]

The court has the discretion to depart downward if it determines that the defendant's criminal history category over-represents the seriousness of the defendant's criminal history or the likelihood that he will commit other crimes the court may depart

---

[9] If this criminal history point is eliminated, together with the single point for the 1/23/01 sentence and the 2 points for the second March 21, 2001 sentence (see footnote 7, infra) the total criminal history score is 7 placing the defendant in category IV as opposed to V.  Of course this argument is moot if the court accepts the defendant's arguments regarding consolidation.

downward. For reasons to be advanced at the sentencing hearing the defendant contends that a downward departure is warranted in this case.

Finally, based upon the nature and circumstances of the offense and the history and characteristics of the defendant, and in consideration of the various statutory factors for the sentence imposed, a sentence in the range of 70-87 months, as suggested by the guideline calculations, is greater than is necessary to comply with the purposes of sentencing as set forth in 18 U.S.C. § 3553 (a) (2). A sentence of in the range of 27 to 33 months is sufficient and not greater than necessary to accomplish the purposes of sentencing.

                              Respectfully submitted,
                              The Defendant, by his attorney

                              /s/ Edward P. Ryan, Jr.
                              _____
                              Edward P. Ryan, Jr.
                              O'Connor and Ryan, P.C.
                              61 Academy Street
                              Fitchburg, MA 01420
                              978-345-4166
                              BBO # 434960

August 24, 2005

<u>Exhibit A</u>

Affidavit of attorney Raymond A. O'Hara

I swear that the following is true to the best of my knowledge, information and belief:

1. I am an attorney duly licensed to practice law within the Commonwealth of Massachusetts, (Mass. Bar #546366)

2. I am also a member of the Criminal Justice Act panels for the United States Federal District Court, Worcester and Boston.

3. I am bi-lingual, Spanish and English, and have represented a significant number of Hispanics in both state and federal courts in Massachusetts and New Hampshire.

4. In the years 2000 and 2001 I represented Silvio Ortega, also known as Eladio Herrera and Carlos Diaz, on criminal matters pending in the Roxbury District Court, South Boston District Court and Boston Municipal Court.

5. I was originally retained to represent Mr. Ortega on criminal complaints in the South Boston District Court.(Docket No, 0003CR1759 and 1763, where Mr. Ortega was accused of possession of cocaine with intent to distribute and providing a false name and identification documents to a police officer.

6. It was determined that there were warrants outstanding against Mr. Ortega in the East Boston District Court, Boston Municipal Court and the Roxbury District Court for cases upon which Mr. Ortega was in default and had employed the names of Carlos Diaz and Eladio Herrera, respectively.

7. It was also determined that Mr. Ortega was illegally within the United States and had worked without permit or permission of the United States Immigration and Naturalization Service.

8. I believe that an immigration detainer had lodged against Mr. Ortega shortly after his arrest and arraignment in the matter before the South Boston District Court.

9. I was then retained to represent Mr. Ortega on the matters that were the subject of default warrants in the other courts.

10. I met with Mr. Ortega after having been supplied with the police reports on the South Boston matter and discussed his options with him.

11. Mr. Ortega also explained to me the facts and circumstances surrounding the cases upon which he was in default in Roxbury District Court and the Boston Municipal Court.

12. Mr. Ortega represented to me that he wished to plead guilty to all matters, receive a "global" sentence on all matters and waive any rights he had concerning his deportation to his native country of Colombia.

13. I explained to him that if he received a sentence of six months or longer to a Massachusetts House of Correction (county jail) he would be eligible for parole in approximately half the time he would have to serve.

14. I also explained to him that it was my experience, based on the overcrowding at the Suffolk County Jail at South Bay, that parole was routinely granted to those who are being held on process in other jurisdictions, especially those against whom were lodged deportation detainers by INS.

15. Mr. Ortega authorized me to enter into negotiations with the Suffolk County District Attorney's Office to secure for him a controlling sentence on the South Boston matters, with concurrent sentences on all the matters in the other courts that would not increase the amount of incarceration he would have to serve before becoming parole eligible.

16. I then arranged to have Mr. Ortega transported by Writs of Habeas Corpus to the courts in which he stood in default.

17. I spoke with representatives of the office of Suffolk County District Attorney to establish a controlling sentence in the South Boston matter, with a series of shorter, concurrent sentences on the other pending matters that would run concurrent with the South Boston sentence and not subject Mr. Ortega to a later parole eligibility date.

18. On January 23, 2001 Mr. Ortega pleaded guilty to all charges in the South Boston District Court.

19. It is my memory that the agreed upon recommendation between the prosecution and myself and Mr. Ortega was for a period of incarceration of 15 months.

20. It is my memory that Justice Warren Powers of the South Boston District Court rejected the recommendation and instead informed Mr. Ortega that he would impose an additional three month sentence on the complaint that alleged providing a false name to the police, to run from and after the fifteen month sentence on the narcotics complaint.

21. Mr. Ortega accepted this sentence, which, subjected him to 18 months incarceration, with parole eligibility in nine months.

22. Mr. Ortega understood that such a sentence would result in his release to a deportation detainer in approximately nine months from the date of his arrest in the South Boston District Court case.

23. The East Boston matter, which alleged operating a motor vehicle after suspension, was subsequently filed after a plea of guilty, with no sentence imposed.

24. On March 16, 2001 the Boston Municipal Court imposed a sentence on Mr. Ortega of six months incarceration, to be served concurrent with the sentence imposed on complaint numbers 0003CR1759 and 1763 from the South Boston District Court.

25. On March 21, 2001 the Roxbury District Court imposed on Mr. Ortega two six months sentences to run concurrent with each other and with the sentence imposed on complaint numbers 0031759 and 1763 in the South Boston District Court.

The foregoing is true to the best of my knowledge, information and belief.

Date:  August 24, 2005                                    ------------------------
                                                          /s/  Raymond A. O'Hara
                                                          _____